## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SETH DONALD ROOSIEN A/K/A SETH ROOSIEN, | Civil Action No.: |
| Plaintiff, | |
| vs. | **DEMAND FOR JURY TRIAL** |
| FRANKENMUTH CREDIT UNION A/K/A FRANKENMUTH CU A/K/A FCU, | |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

For this Complaint, the Plaintiff, Seth Donald Roosien a/k/a Seth Roosien, (hereinafter "Plaintiff" or "Roosien") by undersigned counsel, states as follows:

### NATURE OF THE ACTION

1. This is an action for damages brought by an individual consumer for Defendant Frankenmuth Credit Union's (hereinafter "Defendant") violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.*, (hereinafter "TCPA"), which prohibits the use of automated dialing equipment when making calls to consumers and the Michigan Collection Practices Act (hereinafter "MCPA"), M.C.L. § 445.251, *et. seq.*, which regulates debt collection activities.

2. Plaintiff brings this action against Defendant for its abusive and outrageous conduct in connection with debt collection activity.

3. The TCPA was designed to prevent calls like the ones described herein, and to protect the privacy of citizens like Plaintiff, and by enacting the TCPA, Congress intended to give consumers a choice as to how corporate entities may contact them and to prevent the nuisance associated with automated or prerecorded calls.

## JURISDICTION

4. This action arises out of Defendant's repeated violations of the TCPA and hence this Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 47 U.S.C. § 227.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), in that Defendant transacts business here, Plaintiff resides in this judicial district, and a substantial portion of the acts giving rise to this action occurred here.

## PARTIES

6. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Kent County, Michigan, which is located within this judicial district.

7. Defendant is a Michigan financial services credit union whose main office is located at 580 N. Main Street, Frankenmuth, Michigan 48734.  On its website, Defendant states it is a member owned not-for-profit cooperative with twenty-seven branch locations available to its members.

## FACTS

8. Plaintiff is an individual residing in the state of Michigan.

9. At all relevant times herein, Frankenmuth was a company engaged, by the use of mail, email, and telephone, in the business of collecting a debt from Plaintiff.

10. At all relevant times, Defendant acted as a debt collector as defined by MCL § 445.251.

11. Plaintiff opened an unsecured credit account with Defendant in 2017.

12. The account Plaintiff opened with Defendant was primarily for personal, family or household purposes and is a consumer debt as defined by MCL § 445.251(a).

13. Defendant has been attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes.

14. Because Plaintiff, a natural person allegedly obligated to pay money to Defendant rising from what Plaintiff is informed and believes was a consumer credit transaction.

15. Plaintiff is informed and believes Defendant is one who regularly collects or attempts to collect debts on behalf of themselves.

16, Plaintiff's account was an unsecured credit account and Plaintiff began making payments on the card shortly after it was opened.

17. Plaintiff was making payments on the account for several years before he became financially unable to keep up with the monthly payments.

18. Defendant began contacting Plaintiff in approximately May of 2021 to inquire about the status of the account and to collect on the payments that were no longer being made.

19. Plaintiff retained counsel to assist in dealing with Defendant's debt and to seek some type of financial relief.

20. Counsel for Plaintiff sent Defendant a letter confirming representation of Plaintiff and informing Defendant it was to no longer contact Plaintiff directly and all calls/letters/collection efforts were to no longer be directed at Plaintiff.

21. The contents of the letter also informed Defendant Plaintiff was withdrawing his consent to be contacted on his cellular telephone.

22. Counsel for Plaintiff sent the letter of representation via certified mail to Defendant on June 3, 2021.

23. Defendant received and processed the certified letter on June 7, 2021.

24. Plaintiff informed Defendant he was revoking his consent to be called on his cellular telephone in June of 2021.

25. Defendant continued to contact Plaintiff even after receiving the June 3, 2021 letter of representation and revocation of consent.

26. Defendant, despite receiving notice from Plaintiff, continued to contact Plaintiff through phone calls to Plaintiff's cellular telephone.

27. Defendant would sometimes call Plaintiff numerous times each day demanding payment on the account.

28. Defendant would use an automatic dialing machine when placing the calls to Plaintiff.

29. Defendant's automatic dialing machine contains the capacity to randomly dial numbers.

30. Defendant would leave pre-recorded messages on Plaintiff's cellular telephone.

31. Most of the messages left by Defendant, when Plaintiff did not answer the collection calls, were pre-recorded.

32. Plaintiff was contacted repeatedly regarding non-payment of the debt owed to Defendant despite Defendant being notified Plaintiff had retained counsel to deal specifically with the debt owed to Defendant and that Plaintiff revoked consent to be contacted on his cellular telephone.

33. Defendant's calls were frequent in nature and continued despite receiving written confirmation Plaintiff was represented by an attorney and that all calls to Plaintiff's cellular telephone were to stop.

34. Despite receiving written notice regarding Plaintiff's representation by counsel and revocation of his consent to be contacted on his cellular telephone Defendant continued to call and contact Plaintiff daily regarding his account with Defendant.

## COUNT I

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT –

## 47 U.S.C., *et seq.*

35. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

36. Defendant was informed Plaintiff revoked his consent to be contacted by Defendant in June of 2021.

37. Defendant called Plaintiff numerous times since Plaintiff withdrew his consent to be contacted by an automatic dialing machine.

38. Defendant would contact Plaintiff nearly daily regarding payment on the accounts.

39. Defendant placed the above cited calls using an artificial or prerecorded voice to deliver the collection messages without Plaintiff's prior express consent.

40. All calls placed by Defendant to Plaintiff utilized an "automatic telephone dialing system" as defined by 47 U.S.C. §227(a)(1).

41. These calls were made to Plaintiff's cellular telephone and were not calls for an emergency purposed as defined by 47 U.S.C. §227(b)(1)(B).

42. Plaintiff expressly revoked any consent that may have previously been given to Defendant to be contacted by an automatic dialing machine in June of 2021.

43. Overall Plaintiff was contacted on at least 35 separate occasions by Defendant on his cellular phone despite informing Defendant he was revoking any consent to be contacted on his cellular telephone.

44. These telephone calls by Defendant, or its agent, violated 47 U.S.C. §227(b)(1)(A)(iii).

## COUNT II
## VIOLATIONS OF THE MICHIGAN COLLECTIONS PRACTICES ACT
## MCL § 445.252(h)

45. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. Plaintiff provided written notice, via certified mail, he was represented by counsel by sending Defendant a letter with the name, address, and contact information of his attorney and informing Defendant he was represented by said counsel.

47. Defendant continued to call and attempt to contact Plaintiff despite receiving notice of representation and being informed Plaintiff had retained counsel, who represented Plaintiff with respect to the debt owed to Defendant.

48. The calls and communications made by Defendant to Plaintiff were not related to statements of Plaintiff's account and were attempts to collect a debt.

49. Plaintiff received over 35 calls from Defendant after Defendant was aware Plaintiff was represented by counsel.

50. Defendant violated MCL section 445.252(h) by contacting Plaintiff after receiving noticed Plaintiff had retained an attorney.

## COUNT III

## VIOLATIONS OF THE MICHIGAN COLLECTIONS PRACTICES ACT

## MCL § 445.252(n)

51. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. Defendant placed at least 35 calls to Plaintiff.

53. Plaintiff was contacted multiple times per day by Defendant.

54. Defendant sent written payment demands and collection notices to Plaintiff in addition to the phone calls.

55. Defendant violated MCL section 445.252(n) by contacting Plaintiff over 35 times in a deliberate attempt to call Plaintiff repeatedly and annoy Plaintiff.

## COUNT IV

## INTRUSION UPON SECLUSION

56. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57. The Restatement of the Law, Second, Torts §652B defines intrusion upon seclusion as, "[o]ne who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

58. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress

found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

59. Defendant intentionally interfered, physically or otherwise, with the solitude and seclusion of Plaintiff, namely by engaging in unlawful and intrusive communications.

60. Defendant intentionally caused harm to Plaintiff's emotional well-being by engaging in highly offensive conduct in the course of collecting its debt, and thereby invaded and intruded upon Plaintiff's rights to privacy.

61. Plaintiff has a reasonable expectation of privacy in his solitude, seclusion, and/or private concerns and affairs.

62. These intrusions and invasions against Plaintiff by Defendant occurred in a way that would be highly offensive to a reasonable person in that position.

63. Defendant received notice stating it was no longer to contact Plaintiff as he was represented by counsel and revoked his consent to be contacted on his cellular telephone.

64. As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays for judgment to be entered against Defendant:

1. Statutory damages of $1,500.00 pursuant to 47 U.S.C. §227(b)(3)(C) for each and every violation;

2. Injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. §227(b)(3)(A);

3. Statutory damages pursuant to M.C.L. § 445.257, including attorney's fees and costs;

4. Actual and punitive damages for Defendant's intrusion upon Plaintiff's seclusion; and

5. Any other relief that the court deems appropriate and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 8, 2021

                                   Respectfully submitted,

                                   By: */s/ Desirae Bedford*____
                                   Attorney for Plaintiff Desirae Bedford
                                   RECOVERY LAW GROUP, APC.
                                   55 E. Monroe Street, Suite 3800
                                   Chicago, IL 60603
                                   847-250-1167 (tel.)
                                   872-250-9797 (fax)
                                   dbedford@recoverylawgroup.com